DELBELLO DONNELLAN WEINGARTEN　　　　　　　*Hearing Date: November 24, 2015*
WISE & WIEDERKEHR, LLP　　　　　　　　　　　　*Hearing Time: 10:00 a.m.*
*Proposed Attorney for the Debtor*
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Jonathan S. Pasternak, Esq.
Julie Cvek Curley, Esq.
(914) 681-0200
(914) 684-0288 Facsimile
jpasternak@ddw-law.com
jcurley@ddw-law.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 11

SHELLEY FOOD STORES, INC. II　　　　　　　　　Case No. 15-23535 (RDD)
dba SHELLEY'S FOODSERVICE,

　　　　　　　　　　　　　　　Debtor.
-------------------------------------------------------------------X

**NOTICE OF HEARING ON DEBTOR'S MOTION FOR ORDER
AUTHORIZING DEBTOR TO OBTAIN ADDITIONAL POST-
PETITION FINANCING AND GRANTING JUNIOR SECURITY
INTERESTS PURSUANT TO 11 U.S.C. §364(c)(2)**

**PLEASE TAKE NOTICE**, that upon the annexed motion (the "Motion")[1] of Shelley Food Stores, Inc., II., the above captioned debtor and debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), by its attorneys, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP , the undersigned will move this Court, before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601 on the 24th day of November, 2015 at 10:00 a.m., or as soon thereafter as counsel may be heard for entry of an Order authorizing the Debtor to obtain additional secured post-petition financing on a junior secured basis pursuant to sections

---

[1] Capitalized terms used herein not otherwise defined shall have the meaning ascribed to them in the Motion.

105, 362, 364(c)(1), 364(c)(2), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, together with such other and further relief as may be just and proper under the circumstances.

**PLEASE TAKE FURTHER NOTICE,** that responsive papers, if any, must be filed with Court on the Court's website, www.nysb.uscourts.gov (Login and Password required), with a copy delivered directly to Chambers, and served and received by counsel to the Debtor, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP , One North Lexington Avenue, 11th Floor, White Plains, New York 10601, Attn: Jonathan S. Pasternak, Esq. no later than seven (7) days prior to the date of the hearing.

Dated: White Plains, New York
November 10, 2015

                          DELBELLO DONNELLAN WEINGARTEN
                          WISE & WIEDERKEHR, LLP
                          *Proposed Attorneys for the Debtor*
                          One North Lexington Avenue, 11th Floor
                          White Plains, New York 10601
                          (914) 681-0200


                        By: */s/ Jonathan S. Pasternak*
                              Jonathan S. Pasternak

| | |
|---|---|
| DELBELLO DONNELLAN WEINGARTEN<br>WISE & WIEDERKEHR, LLP<br>*Proposed Attorney for the Debtor*<br>One North Lexington Avenue, 11th Floor<br>White Plains, New York 10601<br>Jonathan S. Pasternak, Esq.<br>Julie Cvek Curley, Esq.<br>(914) 681-0200<br>(914) 684-0288 Facsimile<br>jpasternak@ddw-law.com<br>jcurley@ddw-law.com | *Hearing Date: November 24, 2015*<br>*Hearing Time: 10:00 a.m.* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

                                          Chapter 11

SHELLEY FOOD STORES, INC. II           Case No. 15-23535 (RDD)
dba SHELLEY'S FOODSERVICE,

                                   Debtor.
-------------------------------------------------------------------X

### DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN ADDITIONAL POST-PETITION FINANCING AND GRANTING JUNIOR SECURITY INTERESTS PURSUANT TO 11 U.S.C. §364(c)(2)

**TO:**    **THE HONORABLE ROBERT D. DRAIN,**
         **UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtor and debtor-in-possession Shelley Food Stores, Inc. II, (the "Debtor"), by its proposed attorneys, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP hereby submit this motion (the "Motion") pursuant to sections 105, 362, 364(c)(1), 364(c)(2), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an interim order (the "Interim Order"), *inter alia*,

        (i) authorizing the Debtor to obtain additional junior secured postpetition financing on a secured basis (the "WebBank DIP

Facility") pursuant to the terms and conditions of that certain Loan Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "DIP Agreement") by and between the Debtor and CAN Capital Asset Servicing Inc. dba WebBank ("WebBank"), substantially in the form attached hereto as **Exhibit A**;

(ii) authorizing the Debtor to execute and deliver the WebBank DIP Agreement and the other related credit documents (the "WebBank DIP Documents") by and between the Debtor and WebBank, and to perform such other acts as may be necessary or desirable in connection with the WebBank DIP Documents;

(iii) granting the WebBank DIP Facility and all obligations owing thereunder and under the WebBank DIP Documents to WebBank (collectively, and including all "Obligations" as described in the WebBank DIP Agreement, the "WebBank DIP Obligations") allowed secured claim status in the Case (as defined herein);

(iv) granting to WebBank, automatically perfected security interests in and liens upon all of the DIP Collateral (as defined herein);

(v) authorizing and directing the Debtor to pay the principal, interest, fees, expenses, and other amounts payable under the WebBank DIP Documents as such become due, including, without limitation, closing fees and the reasonable fees and disbursements of the attorneys, advisors, accountants, and other consultants of WebBank, all to the extent provided in and in accordance with the terms of the WebBank DIP Documents;

(vii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the WebBank DIP Documents and this Interim Order, as limited pursuant hereto; and

(viii) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approval of the WebBank DIP Facility on a final basis and approving the form of notice with respect to the Final Hearing.

In support of the DIP Motion, the Debtor respectfully states as follows:

## JURISDICTION

1.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are §§ 105, 362, 364(c)(2), and 507 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code") and 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      On October 23, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.

4.      The Debtor has continued in possession of its business and management of its property pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5.      No trustee, examiner or creditors' committee has been heretofore appointed in this proceeding.

6.      The Debtor is a foodservice manufacturer and distributer in the Metro Tri-State area.

## THE DEBTOR'S EXISTING SECURED DEBT

**A. Santander Bank, N.A**.

7.      On July 2, 2014, the Debtor became indebted to Santander Bank, N.A. ("Santander") for loans under a line of credit (the "Line of Credit Loan") up to the principal amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00), as evidenced by a Note of even date for that sum (said note as amended and modified from time to time, the "Line of Credit Note").  On July 2, 2014, the Debtor became indebted to Santander

3

under a term (the "Term Loan") in the principal amount of One Million and 00/100 Dollars ($1,000,000.00), as evidenced by a Note of even date for that sum (said note as amended or modified from time to time, the "Term Note") together with the Line of Credit Note, the "Santander Loan Agreements"). As of the Filing Date, the outstanding aggregate amounts due Santander from the Debtor under the Santander Loan Agreements was approximately $2,440,000.

**B.    New Jersey Economic Development Authority**

8.    On or about March 23, 2015 the Debtor and New Jersey Economic Development Authority ("NJEDA") entered into a Stronger NJ Business Loan and Security Agreement Working Capital in the principal amount of $1,093,904 (the "NJEDA Loan Agreement"). As of the Filing Date, the aggregate amounts due NJEDA from the Debtor under the NJEDA Loan Agreements is approximately $1,093,940.

**C.    Bay View Funding**

9.    On the Petition Date, the Debtor filed a motion seeking authorization to obtain postpetition financing from CSNK Working Capital Finance Corp. d/b/a Bay View Funding ("Bay View"). By Order dated October 29, 2015 (the "Interim DIP Order"), the Debtor obtained postpetition financing pursuant to § 364(c)(2) of the Bankruptcy Code with a first priority lien and security interest in and to the Debtor's postpetition accounts receivable in the maximum principal amount of $3,000,000.00.

**THE DEBTOR'S NEED FOR POSTPETITION FINANCING**

10.    The Debtor filed its Chapter 11 petition with the principal objective to reorganize by first obtaining much needed additional financing, which would improve the Debtor's cash flow and allow the Debtor to stabilize operations, increase sales, and thereafter consummate,

4

through a plan of reorganization, a merger transaction which would expand the Debtor's business and allow it to return to profits and overall refinance the business upon confirmation of the Plan.

11.     The Debtor has an immediate need to obtain further financing. The structure of the financing with Bay View is such that the financing does not fund until a receivable is generated. However, the Debtor is unable to generate new, postpetition receivables without immediate cash funding. Although the financing with Bay View will ultimately provide the needed cash infusion into the Debtor's operations, such infusion will not happen until postpetition receivables are generated. The Debtor currently has insufficient cash to replenish its inventory and fulfill purchase orders so that the new postpetition receivables can be generated. The Debtor's inventory has continued to deplete since the Filing Date, without any meaningful replenishment rendering the Debtor unable to fulfill purchase orders.

12.     Without the WebBank DIP Facility, the Debtor will not to be able acquire sufficient inventory and thus accept and fulfill all purchase orders, potentially cease operations and serious, immediate and irreparable harm to the Debtor and its estate, as well as its going concern value would result. The purpose of the WebBank DIP Facility will thus be to preserve, maintain and enhance the going concern value of the Debtor, as well as to allow the Debtor to continue to operate its business and to protect its various vendor and business relationships

13.     In sum, without the immediate access to additional junior post-petition financing, the Debtor expects to suffer immediate and irreparable harm to its estate and creditors. The Debtor's ability to preserve the going concern value of its estate for the benefit of its creditors depends upon the interim and final relief requested in this DIP Motion.

5

# SUMMARY OF THE DEBTOR'S PROPOSED DIP FINANCING[1]

14. The Debtor has determined, in the exercise of its sound business judgment, that in order to preserve the value of its assets and permit the Debtor to continue focusing its efforts on its reorganization, the Debtor requires additional junior post-petition financing. To that end, the Debtor has, after seeking numerous proposals from other would be lenders, negotiated the WebBank DIP Agreement with WebBank, which essentially provides for financing on a junior secured basis pursuant to §364(c)(3) of the Bankruptcy Code.

15. The terms of the WebBank DIP Facility are more specifically set forth in the WebBank DIP Agreement attached hereto as **Exhibit "A."** The key provisions of the WebBank DIP Agreement are as follows:

Lender: CAN Capital Asset Servicing Inc. dba WebBank

Borrower: Shelley Food Service, Inc. II

Principal Amout: $300,000 (Three Hundred Thousand Dollars).

Repayment Amount: $438,000 (Four Hundred Thirty Eight Thousand Dollars).

Payment: A weekday payment amount of $829.55 will begin to be debited from the Debtor's DIP bank account on the day the Principal Amount is transferred.

Term: 740 Days

DIP Liens: In order to secure the DIP Obligations, effective immediately upon entry of the Interim Order, pursuant to sections 361, 362, and 364(c)(2) of the Bankruptcy Code, the DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens upon

---

[1] The summaries and descriptions of the terms and conditions of the DIP Agreement and the proposed Interim Order set forth in the DIP Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the DIP Agreement and the Interim Order. In the event there is a conflict between the DIP Motion and the DIP Agreement or the Interim Order, the DIP Agreement and/or the Interim Order, as applicable, shall control in all respects. Any capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Documents and/or the Interim Order.

(collectively, the "DIP Lien") the Debtor's postpetition accounts receivable (the "DIP Collateral").

Fees: In addition to the Repayment Amount, the Debtor agrees to pay WebBank the following fees and charges: (a) a one-time, nonrefundable Origination Fee in the amount set forth in the Key Terms and Conditions on the first page of DIP Loan Agreement; (b) a one-time, non-refundable Administrative Fee in the amount set forth in the Key Terms and Conditions on the first page of DIP Loan Agreement; (c) a fee of $25 (or such lesser amount as permitted by applicable law) for each returned, rejected or dishonored payment, ACH debit, or wire transfer withdrawal, it being understood that WebBank has the right to receive such fee for each business day on which WebBank or its designee attempted and were unable to debit or otherwise withdraw from the Debtor's accounts the amount WebBank was entitled to receive as of such date; (d) the cost of any site visit that confirms a violation of this DIP Loan Agreement, not to exceed $500 for each such visit; (e) if WebBank has not received from the Debtor all Weekday Payment Amounts as of the last day of each month, a late tee equal to 5% of the sum of all Weekday Payment Amounts due but unpaid as of that day (WebBank may assess this late fee once each month until the Debtor has paid all of its obligations to WebBank in full); and (f) charges for providing copies and other documentation the Debtor requests from WebBank (a list of such charges will be made available upon request or online).

Security Interest: For valuable consideration and to secure the prompt payment and performance in full of all of the Debtor, any Principal's or any of the Debtor's affiliates' indebtedness, liabilities and obligations to WebBank, whether direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising, whether or not such indebtedness, liabilities and obligations relate to the loan described in the DIP Loan Agreement and whether or not contemplated by the parties hereto at the time of the granting of this security interest, regardless of how they arise or by what agreement or instrument they may be evidenced or whether evidenced by any agreement or instrument and including obligations to perform acts and refrain from taking action as well as obligations to pay money, including all principal, interest, other fees and expenses, the Debtor hereby grant to WebBank a security interest in the following properties, assets and rights (the "Collateral"), wherever located, whether now owned or hereafter acquired or arising and howsoever your interest therein may arise or appear (whether by ownership, lease, security interest, claim, or otherwise) : (a) any and all amounts owing to the Debtor now or in the future from any merchant processor; (b) all Accounts; (c) all Chattel Paper (including Tangible Chattel Paper and Electronic Chattel Paper); (d) all Instruments; (e) all Goods, including, without limitation, Equipment, motor vehicles, Inventory, Farm Products, Accessions, and As Extracted Collateral; (f) all Documents; (g) all General Intangibles (including, without limitation, Payment Intangibles and software); (h) all Deposit Accounts; (i) all Letter of Credit Rights; (j) all Investment Property; (k) all Supporting Obligations; (l) all trademarks, trade names. service marks, logos and other sources of business identifiers, and all registrations, recordings and applications with the U.S. Patent and Trademark Office ("USPTO") and all renewals, reissues and extensions thereof (collectively "IP"); (m) any records and data

relating to any of the foregoing, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of the Debtor's right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media: and (n) any and all proceeds of any of the foregoing, including insurance proceeds or other proceeds from the sale, destruction, loss, or other disposition of any of the foregoing, and sums due from a third party who has damaged or destroyed any of the foregoing or from that party's insurer, whether due to judgment, settlement or other process. The Debtor irrevocably authorizes WebBank and its designees at any time and from time to time to file: (i) in any filing office in any jurisdiction any initial financing statements and amendments thereto that indicate the collateral therein as all of the Debtor's assets or words of similar effect, regardless of whether such description is greater in scope than the collateral pledged to us hereunder; and (ii) such recordation's with the USPTO WebBank deem necessary or desirable to evidence the security interest in IP described above.

## **REQUEST FOR APPROVAL OF THE DIP FACILITY**

16.     As described above, it is essential to the success of the Case that the Debtor immediately obtain immediate access to additional post-petition financing, without which the Debtor's ability to maintain its business operations will be compromised. The Debtor's ability to acquire inventory to resume accepting and fulfilling purchase orders is contingent on upon the expeditious approval of the WebBank DIP Facility and the related actions requested herein. Without the WebBank DIP Facility, the Debtor's operations will not be able to resume and the Debtor will shut its doors and "go dark". Section 363(b) of the Bankruptcy Code provides that the Debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b). Section 363(f) of the Bankruptcy Code permits the Debtor to sell property under §363(b) free and clear of liens and claims of other entities if such entities consent. Here, the requirements of section 363(f) are satisfied inasmuch as WebBank is the only entity with an interest in the post-petition accounts receivable that solely their financing will generate, and they will be paid in full as provided for herein and as such, upon information and belief, they consent to the proposed WebBank DIP Facility.

17. Section 364 of the Bankruptcy Code[2] distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business and (c) obtaining credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, pursuant to Section 364(c) of the Bankruptcy Code, a court may authorize a debtor-in-possession to obtain credit or incur debt, repayment of which is entitled to superpriority administrative expense status or is secured by a senior lien on unencumbered property or a junior lien on encumbered property, or combination of the foregoing.

18. As a condition to entering into the WebBank DIP Agreement and obtaining the Debtor's needed liquidity, the Debtor must obtain authorization, pursuant to section 364(c) of the Bankruptcy Code, (a) to grant WebBank automatically perfected security interests in and liens upon all of the DIP Collateral, including, without limitation, all post-petition accounts receivable and the proceeds thereof, junior to the lien granted to Bay View, and (b) grant the DIP Obligations allowed Superpriority administrative expense claim status in the Case and any Successor Case, junior to the rights granted to Bay View.

### A.     **Approval Under Section 364(c) of the Bankruptcy Code**

---

[2] Section 364(c) of the Bankruptcy Code provides as follows:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503 (b) or 507 (b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

9

19. The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense." *See In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (noting that "although a debtor is not required to seek credit from every possible source, a debtor must show that it has made a reasonable effort to seek other sources of credit available under section 364(a) & (b)").

B. **The Debtor Was Unable to Obtain Necessary Postpetition Financing on an Unsecured Basis Under Section 364(a) or (b) of the Bankruptcy Code**

20. The Debtor could not have obtained a working capital/loan facility of the type and magnitude required in this Case on an unsecured basis.

21. To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate by good faith effort that credit was not available without the protections of section 364(c) of the Bankruptcy Code. *See also Ames,* 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders).

22. The Debtor submits that, other than the WebBank DIP Facility, there are no better financing alternatives available under the circumstances. The Debtor previously obtained a DIP financing/factoring arrangement with Bay View and provided a first priority security interest on the post-petition accounts receivable. However, Bay View is unable to immediately fund from its respective DIP facility.

23. Moreover, as noted above, all of the Debtor's pre-petition assets are fully encumbered by liens and security interests. Alternative financing in an amount sufficient to

10

repay those creditors and provide additional liquidity is simply not available given the current state of the financial markets, the nature and state of the Debtor's business operations and the size of the financing required. Even if alternative debtor-in-possession financing were available on favorable terms and conditions and could be consummated in a time frame required to address the Debtor's liquidity needs, obtaining such financing would likely result in a difficult and protracted priming contest with the Prepetition Secured Lenders, the results of which could not be predicted with certainty. Any uncertainty occasioned by protracted financing litigation would be extremely damaging to the Debtor, immediately jeopardizing its Chapter 11 case at the outset.

    C.    **The Postpetition Loan is Necessary to Preserve Assets of the Debtor's Estate**

24. As stated above, the WebBank DIP Facility is essential so that the Debtor can restart and resume its operations and immediately begin accepting and fulfilling purchase orders. Absent resuming accepting and fulfilling purchase orders the Debtor's business, the Debtor will not be able to conduct business at all.

25. The success of this case thus entirely depends on the Debtor resuming full operations. If the WebBank DIP Motion is denied or delayed, the Debtor will not be able to resume operations and "go dark" and the success of the Chapter 11 case might be irreparably damaged. In contrast, once the WebBank DIP Facility is approved, the Debtor's ability to acquire inventory to accept and fulfill purchase orders will resume. The Debtor's needs for access to the WebBank DIP Facility are, therefore, urgent and immediate.

    D.    **The Terms of the WebBank DIP Facility are Fair, Reasonable and Appropriate**

26. In the Debtor's considered business judgment, the WebBank DIP Facility is the best financing option available in the circumstances of this case. The purpose of the facility is to

enable the Debtor to maintain the value of its estate while pursuing a going concern sale of the Debtor's business for the benefit of all stakeholders.

27. The proposed WebBank DIP Facility provides, generally, that the liens granted to WebBank with respect to the WebBank DIP Facility shall be subject and subordinate to the existing secured obligations owed to Bay View, in accordance with §364(c)(3), as junior liens against, and security interests in, all of the Debtor's post-petition assets and receivables.

**E.        Application of the Business Judgment Standard**

28. After appropriate and extensive investigations and analysis, and robust, good faith, and arm's length negotiations among the Debtor and WebBank, the Debtor's management concluded that the WebBank DIP Facility is the best alternative available in the circumstances of this case. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.,* 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset based facility were approved because they "reflect[ed] sound and prudent business judgment on behalf of TWA . . . [were] reasonable under the circumstances and in the best interest of TWA and its creditors"); *In re TM Carlton House Partners, LTD,* 91 B.R. 349, 357 (Bankr. E.D. Pa. 1988) (holding that due to the debtor's distinct awareness of its own financial needs, the court would not second-guess its business judgment to put aside cash to effectuate a refinancing of its debts); *cf. Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.,* 318 U.S. 523, 550 (1943) (holding that decisions regarding the rejection or assumption of a lease is left to the business judgment of the debtor); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus. Inc.,* 37 B.R. 3, 17 (Bankr. S.D.

12

Ohio 1983) (same); *In re Curlew Valley Assocs.,* 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (holding that courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code"). In fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir. 1985).

29. The Debtor has exercised sound business judgment in determining that an additional post-petition credit facility is appropriate and has satisfied the legal prerequisites to incur debt under the WebBank DIP Facility. The terms of the WebBank DIP Agreement are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to enter into the WebBank DIP Agreement and obtain funds from WebBank on the junior secured, administrative "superpriority" basis described above, pursuant to sections 364(c) and (d) of the Bankruptcy Code.

## REQUEST FOR MODIFICATION OF THE AUTOMATIC STAY

30. In order to successfully implement the foregoing, the Debtor respectfully requests that the Court waive the notice requirements provided for by Bankruptcy Rule 6004(a), the twenty-day stay provided for by Bankruptcy Rule 6003(b), and the fourteen-day stay provided for by Bankruptcy Rule 6004(h). The Debtor believes, for the reasons set forth above, that ample justification exists for the Court to waive Bankruptcy Rule 6003(b), 6004(a), and 6004(h).

**REQUEST FOR WAIVER OF STAY**

31. The Debtor further seeks a waiver of the stay of the effectiveness of the Interim Order, and any subsequent Order, that may be imposed by any applicable Bankruptcy Rule. As set forth above, the need for financing is essential to prevent potentially irreparable damage to the Debtor's operations, value and ability to reorganize. Accordingly, the Debtor submits that sufficient cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

**REQUEST FOR HEARING ON SHORTENED NOTICE FOR INTERIM
RELIEF PURSUANT TO LOCAL BANKRUPTCY RULE 9077-1**

32. In connection with the relief requested in the Motion herein, the Debtor is seeking a hearing on shortened notice to consider authority to, *inter alia*, authorization to obtain WebBank DIP financing, and use the cash collateral of WebBank on an interim basis pursuant to §364(c)(3) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001.

33. As stated hereinabove, the Debtor does not have sufficient inventory to fulfill purchase orders, nor does the Debtor have any cash on hand to replenish its inventory. Prior to the Filing Date, the Debtor had exhausted substantially all of its cash assets, and was left in a position without cash to continue its operations. The Debtor explored numerous avenues of lending pre-filing, but, however, was unable to find any lender willing to lend to the Debtor given its current debt structure. The only avenue by which any lender would consider lending to the Debtor would be if the proposed factoring of post-petition receivables, under Section 364(c) of the Bankruptcy Code, which financing the Debtor previously obtained. However, due to the Debtor's cash restraints, the Debtor is currently unable to create the requisite post-petition accounts receivable to prompt the funding by Bay View.

34. In order to preserve the Debtor's assets and value as a "going concern," WebBank DIP Financing is necessary to provide the Debtor with adequate cash flow to meet its very minimum operating expenses and administrative costs of maintaining its estate.

35. The Debtor immediately requires financing to acquire inventory to resume operations and fulfill purchase orders. The Debtor does not have any cash reserves to acquire sufficient inventory and thus immediate funding is necessary to prevent irreparable harm and damage to the Debtor's estate.

36. Furthermore, the immediate and continued use of cash collateral is essential to the operation of the Debtor's business and value of its assets, and will not only preserve the estate but will help to maximize its value for the benefit of its creditors. Without the immediate, pre-final hearing authority to use cash collateral on an interim basis and pending the final hearing, the Debtor will not be able to make payroll and other imminent and necessary expenses to sustain its operations. If the Debtor is not permitted to immediately use cash collateral, the Debtor's business will be in jeopardy by virtue of the Debtor's inability, under such circumstances, to pay its employees and the daily costs and expenses associated with its daily business operations. As such, the Debtor submits that its request for interim use of cash collateral herein is reasonable, proper and in the best interests of its creditors.

37. The Debtor therefore desires to obtain authority to obtain WebBank DIP Financing on an interim basis pending a final hearing.

38. The Bankruptcy Rules provide for a shortening of time under certain circumstances. Bankruptcy Rule 9006(c) provides as follows:

(c) *Reduction.*

(1) *In General.* Except as provided in paragraph (2) of this subdivision,

when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.

(2) *Reduction Not Permitted*. The court may not reduce the time for taking action under Rules 2002 (a)(4) and (a)(8), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

39. Thus, the Bankruptcy Rules specifically authorize the Court to hear a motion such as the Motion herein on shortened notice, for cause shown.

40. The Debtor respectfully submits that sufficient cause exists for scheduling a hearing on shortened notice to consider the Motion. Scott Geller, the President of the Debtor, is signing this Motion and affirms under penalties of perjury that the contents are true and correct.

41. Notice of this Motion will be provided as set forth in the Order Scheduling Hearing to be entered by the Court. The Debtor submits that said notice is adequate and proper.

42. In the event the Court does not find cause to shorten the notice period for this Motion, this Motion will be provided on twenty-one (21) days notice to (i) Office of the United States Trustee; (ii) parties who have filed notices of appearance; and (iii) all creditors. The Debtor submits that said notice is adequate and proper.

## NO PREVIOUS RELIEF REQUESTED

43. The Debtor has not previously sought the relief requested herein from this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) GRANT the Motion, (ii) enter the Interim Order, substantially in the form attached hereto as **Exhibit "B"**, granting the relief requested; (iii) set the Final Hearing; and (iv) grant such other and further relief as is just and proper.

16

Dated: White Plains, New York
November 10, 2015

                            SHELLEY FOOD STORES, INC., II

                            By: */s/ Scott Geller*
                                Scott Geller, President