James P. Berg, Esq.
Fred W. Hoensch, Esq. (admitted *pro hac vice*)
PARKER IBRAHIM & BERG LLC
5 Penn Plaza, Suite 2371
New York, NY 10001
Main: 212.596.7037
Fax: 212.596.7036
james.berg@piblaw.com
fred.hoensch@piblaw.com
*Attorneys for Santander Bank, National Association*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re:

SHELLEY FOOD STORES, INC. II
dba SHELLEY'S FOODSERVICE,

Debtor.

Case No. 15-23535-rdd

Chapter 11

**OBJECTION OF SECURED CREDITOR SANTANDER BANK, NATIONAL ASSOCIATION TO DEBTOR'S MOTION FOR ORDERS (A) AUTHORIZING DEBTOR (I) TO OBTAIN POST-PETITION FINANCING AND GRANTING SECURITY INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND 364(c); (II) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (III) TO PROVIDE ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361; AND (B) SCHEDULING A FINAL HEARING**

Santander Bank, National Association ("Santander") by and through its attorneys, Parker Ibrahim & Berg LLC, hereby objects to the Debtor's Motion For Orders (a) Authorizing Debtor (ii) to Obtain Post-Petition Financing and Granting Security Interests Pursuant to 11 U.S.C. §§ 363(b) and 364(c); (ii) to Use Cash Collateral Pursuant to 11 U.S.C. § 363; (iii) to Provide Adequate Protection Pursuant to 11 U.S.C. § 361; and (b) Scheduling a Final Hearing (the "Motion"), and states as follows:

**BACKGROUND**

1.  On October 23, 2015 (the "Petition Date"), the Debtor commenced the above-captioned case by filing a Petition under Chapter 11 of the Bankruptcy Code.

2. Santander has a properly perfected first priority lien pursuant to Debtor's July 2, 2014 Line of Credit Loan in the amount of $1,500,00.00 and the $1,000,000.00 Term Loan (the "Santander Loan Agreements"). True and correct copies of the Santander Loan Agreements are attached hereto as **Exhibit A**.

3. As security for the Santander Loan Agreements, Debtor granted Santander a security interest in, among other things and without limitation, substantially all of the Debtor's assets including, but not limited to, then owned or thereafter acquired accounts, instruments, inventory, equipment, chattel paper and general intangibles pursuant to a UCC-1 Financing Statement filed on September 18, 2014 (the "Santander Collateral"). A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit B**.

4. As of the Petition Date, the Debtor owed Santander approximately $2,440,000.00 pursuant to the Santander Loan Agreements.

5. The Debtor acknowledges that the liens and security interests granted to Santander were duly perfected and agreed that said liens and security interests are senior and superior in time and right to all other liens and security interests in the Santander Collateral, except for perfected mechanic's liens or purchase money security interests. *See* Motion, ¶ 9.

6. The Debtor also acknowledges that its assets – and the Santander Collateral - consist almost entirely of accounts receivable, and that as of the Petition Date, it believes that Santander is under secured based upon its current gross accounts receivable. *See* Motion, ¶ 15.

7. On October 23, 2015, the Debtor filed its Motion seeking authorization to obtain superpriority post-petition financing and to use Santander's cash collateral.

8. On October 29, 2015, the Court entered an interim order [Docket No. 15] (the "Interim Order"), pursuant to which Santander stipulated to the Debtor's use of its cash collateral for a period of thirty days. The Interim Order further authorized the Debtor to obtain post-petition

financing on an interim basis secured by a superpriority lien on the Debtor's post-petition accounts receivable. As purported adequate protection, Santander was granted a replacement lien, a junior lien to secure any Collateral Diminution and adequate protection payments of $20,000.00 per month.

9. A Final Hearing on the Debtor's use of Santander's cash collateral has been scheduled for November 24, 2015 at 10:00 a.m.

10. Upon evaluation of the Debtor's operations during this interim period, it has become clear that Santander's interests in the Santander Collateral are not adequately protected.

11. Accordingly, Santander hereby objects to the Debtor's continued use of its cash collateral.

## ARGUMENT

12. A secured creditor's interest in collateral is entitled to adequate protection under section 363(e) of the Bankruptcy Code. This section of the Bankruptcy Code "insure[s] that the secured creditor receives the value for which he bargained." S. Rep. No. 95-989, at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5839; accord H.R. Rep. No. 95-595, at 303 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6295; *see United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1397 (5th Cir. 1986), *aff'd*, 484 U.S. 365 (1988) ("Although the stay temporarily prevents that aspect of the bargain from being fulfilled, a creditor should not be prejudiced by a debtors' continued use of collateral during the proceeding. That bargain must be protected by compensating for a decline in the value of the collateral through its use during the pendency of the stay."); *see also In re O.P. Held, Inc.*, 74 B.R. 777, 782-84 (Bankr. N.D.N.Y. 1987) (holding that secured lender must be assured of the maintenance and recoverability of its lien, and that debtor must prove that secured creditor will realize the value of its bargain).

13. Under section 361 of the Bankruptcy Code, adequate protection can take the form of, among other things, periodic cash payments, additional or replacement liens, or such other relief as will provide the "indubitable equivalent" of the secured creditor's interest in the collateral. The law is clear that section 361 of the Bankruptcy Code does not limit adequate protection to the enumerated examples, and courts have the authority to fashion adequate protection as they deem appropriate under the circumstances. *See, e.g., In re O.P. Held, Inc.*, 74 B.R. at 782 (noting that section 361 "has been consistently interpreted as not containing an exclusive list" of forms of adequate protection).

14. The Debtor bears the burden of proving by clear and convincing evidence that a secured creditor is adequately protected. *See* 11 U.S.C. § 363(p)(1); *see also In re Polzin*, 49 B.R. 370, 371-72 (Bankr. D. Minn. 1985) ("[D]ue to the fact that the collateral is consumed or used up in a § 363 context and the creditor's use is not merely delayed as in a § 362 context, the adequate protection standard is a strict one. . . . It is the Debtor's burden to demonstrate that the secured party is adequately protected.") (citations omitted); *In re O.P. Held, Inc.,* 74 B.R. at 784 (holding that debtor requesting court authorization for use of cash collateral "must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case" (quoting *N. Trust Co. v. Leavell (In re Leavell)*, 56 B.R. 11, 13 (Bankr. S.D. Ill. 1985))).

15. The Bankruptcy Code provides special protections to ensure that secured creditors are not deprived of their interests in cash collateral by the unauthorized use thereof. *See, e.g., In re Kleather*, 208 B.R. 406, 416 (Bankr. S.D. Ohio 1997) (noting that, in enacting section 363 of the Bankruptcy Code, Congress gave "special treatment to 'cash collateral'. . . in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor") (quoting *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981)). Consequently, although

section 363(c)(1) otherwise permits a debtor to use property of the estate in the ordinary course of business without notice and a hearing, section 363(c)(2) prohibits a debtor from using cash collateral for any purpose without first obtaining court approval or the consent of the secured lender. *See* 11 U.S.C. § 363(c)(2).

16. A court is prohibited from authorizing non-consensual use of cash collateral unless the secured party's interest therein is adequately protected. *See* 11 U.S.C. § 363(e) (providing that a court "shall", upon request by an entity with an interest in property proposed to be used, sold or leased by a debtor, "prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."); *see, e.g., Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity.").

17. Moreover, "[t]he standard of adequate protection to be afforded a creditor when its cash collateral is being used should be a high one. . . . To ask a creditor to release cash requires a strong likelihood of return." *In re Berens*, 41 B.R. 542, 528 (Bankr. D. Minn. 1984). Courts have noted that the volatile character of cash collateral entitles lienholders to special protections under the Bankruptcy Code. *See, e.g., In re Kleather*, 208 B.R. at 416 (noting that cash collateral is treated specially "for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards. . . ." (*quoting In re Mickler*, 9 B.R. at 123); 3 COLLIER ON BANKRUPTCY ¶363.03[4][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) (noting the "unique nature of cash collateral, and the risk to the entity with an interest in such collateral, arising from the dissipation or consumption of the collateral").

18. Finally, any substitute adequate protection offered in lieu of cash must be of the "most indubitable equivalence" that "must both compensate for present value and insure the safety

of the principal." *Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus. Inc.)*, 734 F.2d 426, 433 (9th Cir. 1984); *see also Aetna Realty Investors, Inc. v. Monarch Beach Venture, Ltd (In re Monarch Beach Venture, Ltd.)*, 166 B.R. 428, 434 (C.D. Cal. 1993) (noting that an indubitable equivalent "(1) provides the creditor with the present value of its claim, and (2) insures the safety of its principle [sic]").

19. Here, Santander is not adequately protected.

20. At the outset of this case and on less than one business day's notice, Santander agreed to take a reasonable wait and see approach and consented to the use of its cash collateral for a period of thirty days while the Debtor was attempting to resume and rehabilitate its operations. However, this has not happened.

21. Despite the DIP financing approved by the Court, the Debtor "currently has insufficient cash to replenish its inventory and fulfill purchase orders so that the new postpetition receivables can be generated. The Debtor's inventory has continued to deplete since the Filing Date, without any meaningful replenishment rendering the Debtor unable to fulfill purchase orders." *See* Debtor's Motion for Order Authorizing Debtor to Obtain Additional Post-Petition Financing and Granting Junior Security Interests Pursuant to 11 U.S.C. § 364(c)(2) [Docket No. 22] (the "Second DIP Motion"), ¶ 11. In fact, before the ink was even dry on the first DIP Facility from Bay View, the Debtor has now filed its Second DIP Motion seeking authority to incur additional post-petition financing from WebBank.

22. At this point, it appears that the Debtor is a mere shell trying to keep itself afloat through the use of the cash collateral of Santander, which is being asked to assume all of the risk associated with the Debtor's purported reorganization. All the while, the Debtor is continuing to fund payroll for its employees when there is limited work to be done and continuing to run up legal fees.

23. Further, Santander's collateral is being severely eroded. The funds collected from the Debtor's prepetition accounts receivable are being used to buy inventory and create new post-petition receivables in which Bay View has a superpriority lien position senior to that of Santander's lien. If the Debtor is permitted to continue to use Santander's cash collateral, Santander will, for all intents and purposes, be converted from a secured creditor to an unsecured creditor. This is both inappropriate and impermissible.

24. Pursuant to the Debtor's budget, the Debtor estimates that more than $625,000.00 in accounts receivable will be collected during the Interim Period while Santander receives only $20,000.00 in adequate protection payments.

25. Further, the Debtor admits that Santander is under secured. Therefore, there is no equity cushion to serve as adequate protection of Santander's interests.

26. The Debtor has not offered Santander any additional collateral or increased periodic payments which could serve as additional adequate protection.

27. As it currently stands, the "adequate protection" provided in the Interim Order does not provide Santander with the "indubitable equivalent" of its interest in the Santander Collateral and Santander is being severely prejudiced by a debtors' continued use of its cash collateral during the proceeding.

28. Further, from November 9, 2015 through November 11, 2015, an Examiner retained by Santander conducted an on-site examination of the Debtor's operations and books and records.

29. During this inspection, the Examiner noted issues with respect to the Debtor's bookkeeping. By way of example, the Debtor is using one accounts receivable ledger for both prepetition and post-petition receivables. *See* Declaration of Ira Wolfe attached hereto as **Exhibit C** ("Wolfe Declaration"), ¶ 3. Since the Petition Date, the Debtor has generated new billings in the amount of approximately $93,000.00. Id. at ¶ 4. When these new receivables begin to be assigned

to Bay View, the lack of segregated accounts receivable ledgers for prepetition and post-petition receivables will potentially result in the inability to determine whose receivables are being paid and collected.

30. Further, the Debtor's bookkeeping errors appear to have caused the Debtor to significantly overstate the value of Santander's collateral at the time the Motion was filed. During the inspection, the Examiner discovered that the Debtor had collected an as-of-yet unknown amount of cash that it received from its account debtors without remittance advices. Id. at ¶ 5. This cash was deposited by the Debtor but was not reflected as having been received in the Debtor's systems. Id.

31. These questionable bookkeeping practices of the Debtor raise serious concerns about the reliability of the Debtor's books and records and its representations to Santander and the Court. Combined with the Debtor's diminished operations and the continuing erosion of Santander's collateral, Santander is not adequately protected and therefore opposes the Debtor's continued use of Santander's cash collateral after the expiration of the interim DIP period.

**WHEREFORE,** Santander respectfully requests that the Court enter an Order (i) prohibiting the Debtor's continued use of Santander's cash collateral and (ii) granting Santander such other and further relief as is just, proper and equitable.

Dated: November 17, 2015

**PARKER IBRAHIM & BERG LLC**
*Attorneys for Creditor,*
Santander Bank, National Association

*/s/* James P. Berg_____
James P. Berg, Esq.
Fred W. Hoensch, Esq. (admitted *pro hac vice*)
270 Davidson Avenue
Somerset, New Jersey 08873
Phone: 908.725.9700
Facsimile: 908.333.6230
james.berg@piblaw.com
fred.hoensch@piblaw.com