UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

                                          Chapter 11

SHELLEY FOOD STORES, INC. II         Case No. 15-23535 (RDD)
dba SHELLEY'S FOODSERVICE,

                              Debtor.
-------------------------------------------------------------------X

**THIRD INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH
COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND PROVIDING ADEQUATE
PROTECTION THEREFOR PURSUANT TO §§ 361 AND 362**

**RECITALS:**

A.       Filing. On October 23, 2015 (the "Petition Date"), Shelley Food Stores, Inc. II, the above captioned debtor and debtor in possession (the "Debtor"), filed a voluntary petition for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code").  Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor has retained possession of its assets and is authorized thereby, as a debtor in possession, to continue the operation and management of its business. The Debtor is a foodservice manufacturer and distributor in the Metro Tri-state area. No trustee, examiner or statutory committee has been appointed heretofore.

B.       Motion. By motion dated October 23, 2015 (the "Motion"),[1] the Debtor sought entry of orders authorizing the Debtor (I) to obtain postpetition financing and granting security interests pursuant to §364(c) of the Bankruptcy Code, (II) to use cash collateral pursuant to §363 of the Bankruptcy Code, and (III) provide adequate protection pursuant to §361 of the Bankruptcy Code. An interim hearing (the "First Interim Hearing") was held on October 26,

2015, and the Court entered an Interim Order on October 29, 2015 (ECF No. 15 – the "First Interim Order"), and a second interim hearing was held on November 24, 2015 (the "Second Interim Hearing"), and the Court entered a Second Interim Order on December 3, 2015 (ECF No. 44 – the "Second Interim Order") with respect to the Motion. Subsequently, the Court held a telephonic conference on the Motion.

    C.    Prepetition Capital Structure.

    a.    Santander Bank, N.A. ("Santander") has asserted that it holds a perfected security interest in all of the Debtor's personal property, including the proceeds thereof, by virtue of a Line of Credit Loan dated July 2, 2014 and Term Loan dated July 2, 2014 between the Debtor and Santander (the "Santander Loan Agreements").

    b.    The Debtor (for itself but not its estate, and subject to the rights of any party in interest to contest such acknowledgement on its own behalf and to obtain authority to contest such acknowledgement on behalf of the Debtor's estate [the "Reservation"]) acknowledges that: (1) the Debtor's repayment obligations under the Santander Loan Agreements are secured by, *inter alia*, liens and security interest in all of the Debtor's cash and cash equivalents (the "Santander Cash Collateral") by virtue of a UCC-1 Financing Statements, filed on or about September 18, 2014 (the "Santander Pre-Petition Lien"), (2) all of the prepetition cash proceeds from collection of the Debtor's prepetition accounts receivable constitute Cash Collateral within the meaning of §363(a) of the Bankruptcy Code, in which Santander has a perfected interest, and (3) as of the Filing Date, the Debtor was indebted to Santander in the amount of approximately $2,440,000.

---

[1] Capitalized terms used herein not otherwise defined shall have the meaning ascribed to them in the Motion.

{00512977.DOCX }

2

c. New Jersey Economic Development Authority ("<u>NJEDA</u>")[2] has asserted that it holds a perfected security interest in all of the Debtor's personal property, including the proceeds thereof, by virtue of a Stronger NJ Business Loan and Security Agreement Working Capital dated March 23, 2015 between the Debtor and NJEDA (the "<u>NJEDA Loan Agreement</u>" together with the Santander Loan Agreements, the "<u>Pre-Petition Obligations</u>").

d. The Debtor asserts, subject to the Reservation that: (1) the Debtor's repayment obligations under the NJEDA Loan Agreement are secured by, *inter alia*, liens and security interest in all of the Debtor's cash and cash equivalents (the "<u>NJEDA Cash Collateral</u>") by virtue of a UCC-1 Financing Statements, filed on or about June 24, 2015 (the "<u>NJEDA Pre-Petition Lien</u>"), (2) all of the cash proceeds from collection of the Debtor's prepetition accounts receivable constitute Cash Collateral within the meaning of §363(a) of the Bankruptcy Code, in which NJEDA has a perfected interest, and (3) as of the Filing Date, the Debtor was indebted to NJEDA in the amount of approximately $1,093,940. The Debtor's assets consist almost entirely of accounts receivable. As of the Petition Date, the Debtor had gross receivables of approximately $1,500,000. Accordingly, the Debtor believes that (a) Santander is undersecured, and (b) NJEDA is wholly unsecured under §506(a) of the Bankruptcy Code.

D. <u>Need to use Cash Collateral</u>. The continued use of the Santander Cash Collateral and NJEDA Cash Collateral (collectively, the "<u>Cash Collateral</u>") is essential to the continued operation of Debtor's business and the preservation of Debtor's estate. The continued use of Cash Collateral on a further interim basis pending a final hearing on the Motion is necessary to prevent immediate and irreparable harm to the Debtor's estate, in that, without authorization to

---

[2] NJEDA and Santander, collectively, the "Prepetition Lenders".

{00512977.DOCX }

3

use Cash Collateral, the Debtor's ability to sustain its operations and meet its current necessary and integral business obligations will be impossible.

E.  Need for Approval. The Debtor agrees to provide for the use of the Cash Collateral and to provide Santander and NJEDA (collectively, the "Prepetition Lenders") with adequate protection therefor as defined in §§ 361 and 363(a) of the Bankruptcy Code upon the terms and conditions as stated below.

Now, in consideration of the above-stated premises:

**IT HEREBY IS ORDERED**, as follows:

1. The Motion is granted on a further interim basis to the extent provided herein. Any objections to the Motion and entry of this Order (the "Third Interim Order") that have not been previously withdrawn, waived or settled, are hereby denied and overruled.

2. This Court has jurisdiction over this case and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). This is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2).

3. Notice of the Second Interim Hearing on the Motion was adequate and appropriate in the current circumstances of this Chapter 11 case as contemplated by Bankruptcy Code §102(a) and Bankruptcy Rule 4001(b)(2).

4. Effective *nunc pro tunc* as of the Petition Date and continuing through and including December 9, 2015 (the "Third Interim Period"), the Debtor is authorized to use Cash Collateral up to the amount of $92,517.10 subject to the terms of this Third Interim Order, which collectively constitute adequate protection for that use, in an aggregate amount up to but not in excess of the actual anticipated cash needs of the Debtor during the Third Interim Period. The

{00512977.DOCX }

Debtor may use Cash Collateral only as provided in the budget annexed hereto as Exhibit "A" (the "Budget"). At the Final Hearing (defined below), the Court will consider entry of a final Order.

5. In addition to the existing rights and interests of the Prepetition Lenders, and for the purpose of adequately protecting the Prepetition Lenders from Collateral Diminution,[3] Santander is granted a replacement lien (the "Replacement Lien") in the Debtor's postpetition cash proceeds of the Cash Collateral, to the extent that said lien was valid, perfected and enforceable as of the Petition Date and in the continuing order of priority of their respective Pre-Petition Liens, without determination herein as to the nature, extent and validity of said Pre-Petition Liens.

6. The security interests and liens herein granted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Prepetition Lenders on the Petition Date, (ii) shall secure the payment of indebtedness to the Prepetition Lenders solely in an amount equal to the aggregate Collateral Diminution resulting from the Cash Collateral used or consumed by the Debtor, and (iii) shall be deemed to be perfected without the necessity of any further action by the Prepetition Lenders or the Debtor. Without limitation, therefore, the Prepetition Lenders shall not be required to file financing statements or other documents in any jurisdiction or take any other action to validate or perfect the liens and security interests granted by this Order.

7. As further adequate protection for the Debtor's use of Cash Collateral during the

Third Interim Period, the Debtor's DIP Lender, CSNK Working Capital Finance Corp. d/b/a Bay View Funding ("Bayview"), shall, subject to the terms of the Bayview Factoring Agreement directly remit to Santander, for application to Santander's allowed secured claim, all advances, proceeds and other amounts which would otherwise be remitted to the Debtor from Bayview as a result of all factored postpetition receivables up to the amount of actual cash used by the Debtor during the Third Interim Period. The Debtor and Bayview are hereby authorized and directed to remit the Debtor's factored proceeds directly to Santander in accordance with the terms of this Paragraph, and Bayview and Santander are hereby authorized to execute any and all documents, including an intercreditor agreement, to implement the terms of this Paragraph and this Order in general. To the extent that Bayview does not for any reason factor such receivables, Santander shall be granted a first priority replacement lien on such receivables and the proceeds therefrom.

8. The Debtor shall have no authority to use the Santander Cash Collateral beyond December 9, 2015 absent either (a) consent by Santander or (b) further order of the Bankruptcy Court.

9. The automatic stay imposed by virtue of §362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit Santander to, in its sole discretion: (i) receive payments to be made by the Debtor and/or Bayview to Santander, (ii) apply, allocate or pay the remitted funds from the Debtor and or Bayview, including the proceeds from the pre-petition accounts receivable, to the

principal of Santander's allowed secured claim, and (iii) take any action specifically authorized

---

[3] For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of the Secured Creditors' respective interests in Debtor's property as of the Filing Date by reason of Debtor's use of Cash Collateral

or contemplated by this Third Interim Order.  Any of the aforementioned actions may be taken without further order of this Court.

10. The Debtor shall maintain all necessary insurance, including, without limitation, general, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the businesses in which the Debtor is engaged, naming the Prepetition Lenders as loss payees with respect thereto.

11. Notwithstanding anything to the contrary in this Third Interim Order, the Prepetition Lenders shall be entitled to seek relief from the automatic stay under §362(a) of the Bankruptcy Code to exercise their rights under their respective Loan Agreements, or to seek to convert this case to a case under Chapter 7 of the Bankruptcy Code, (a) upon the fifth (5) business day following the filing on the docket of this case and delivery of written notice to the Debtor, its bankruptcy counsel, any official committee of unsecured creditors, and the Office of the United States Trustee of any breach or default by the Debtor of the terms and provision of this Third Interim Order, unless the Debtor shall have cured such breach or default within such five (5) business day period, or (b) without notice of any kind upon (i) the Expiration Date or (ii) the entry of an order of the Court providing for the dismissal or conversion of this Chapter 11 case to a case under Chapter 7 or appointment of a trustee without the written consent of the Prepetition Lenders. The Prepetition Lenders may seek such relief on an emergency basis, and the Debtor is hereby deemed to consent to any request for an emergency hearing, provided that such hearing is on at least two business days' notice.  Notwithstanding such consent to an

---

in accordance with this Order.

{00512977.DOCX }

emergency hearing, the Debtor specifically reserves, and does not waive, its right to oppose any such relief requested or to take any other action permitted under the Bankruptcy Code.

12. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of the Prepetition Lenders and the Debtor. If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, priority or benefit, or application of payment authorized hereby with respect to any indebtedness of the Debtor to the Prepetition Lenders.

13. The findings contained in this Order are binding upon the Debtor and all parties in interest (including but not limited to any statutory committee appointed in this case), and any application of Cash Collateral under this Order shall be indefeasible, unless (a) an adversary proceeding or contested matter challenging the validity, enforceability or priority of the Cash Collateral, related Liens, the Pre-Petition Obligations, the Replacement Liens, or the Pre-Petition Liens as they relate to Cash Collateral is properly commenced no later than ninety (90) days from the entry of this Third Interim Order or an extension of such time is obtained or is granted by the Court for cause, and (b) a final order is entered in favor of the plaintiff or movant in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly commenced as of such date, the Cash Collateral and the Pre-Petition Obligations shall constitute allowed claims for all purposes in the Chapter 11 Case and any subsequent Chapter 7 case, the Replacement Liens and the Pre-Petition Liens shall be deemed legal, valid, binding, perfected, not subject to subordination and otherwise unavoidable, and the Cash Collateral, the Pre-Petition Obligations, the Replacement Liens, and

the Pre-Petition Liens shall not be subject to subordination, avoidance, or any other further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, and successor(s) thereto, subject, however, to valuation for purposes of Sections 506(a) and (b) and 1129 of the Bankruptcy Code and any conduct of the Lenders after the date of this Third Interim Order. If any such proceeding or contested matter is properly commenced, the Bankruptcy Court shall determine the validity, enforceability, and priority of the Cash Collateral, the Pre-Petition Obligations, the Replacement Liens and the Pre-Petition Liens, but only with respect to and to the extent of the objections raised in such adversary proceeding or contested matter, and all other matters and objections not raised in such adversary proceeding or contested matter shall be deemed forever waived.

14. Notwithstanding anything herein to the contrary, nothing contained in this Order shall be deemed to limit the right of any subsequently appointed Chapter 7 trustee to challenge the validity of either the Pre-Petition Liens and/or the Replacement Liens, and nothing herein shall be construed to affect any party's lien priority and/or limit their right to challenge any lien priority granted herein.

15. This Order shall be binding upon any subsequently appointed or elected trustee in a successor case under Chapter 7 of the Bankruptcy Code.

16. The Bankruptcy Court shall retain jurisdiction with respect to all matters pertaining to this Order.

17. A final hearing on the Debtor's use of Cash Collateral shall be held on December 18, 2015 at 10:00 a.m., or as soon thereafter as counsel may be heard (the "<u>Final Hearing</u>"), before the Honorable Robert D. Drain in the United States Bankruptcy Court for the Southern District

of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601. Objections, if any, to the relief requested in the Motion must be made in writing, filed with the Court on the Court's Electronic Case Filing System, at www.ecf.nysb.uscourts.gov (login and password required), with a copy delivered directly to the Court's chambers and served upon DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, attorneys for the Debtor, One North Lexington Avenue, 11th Floor, White Plains, New York 10601, Attn: Julie Cvek Curley, Esq. so as to be received no later than two days prior to the hearing.

18. The Debtor shall serve a copy of this Order upon (a) the United States Trustee, (b) the Debtor's Prepetition Lenders, or their counsel, (c) the Debtor' post-petition DIP lender, or its counsel, (d) the Debtor's twenty (20) largest unsecured creditors, and (e) parties filing notices of appearance, by first class mail within one day of entry of this Order, which shall be deemed good and sufficient service hereof

Dated: White Plains, New York
December 14, 2015

/s/Robert D. Drain
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

{00512977.DOCX }

# EXHIBIT A

## THIRD INTERIM BUDGET FOR PERIOD 12/3/15-12/9/15

| | |
|---|---|
| Payroll | $56,670.64 |
| Food Purchases | $30,000 |
| Fuel | $4,600 |
| Miscellaneous | $1,246.46 |
| TOTAL: | $92,517.10 |