James P. Berg, Esq.
Fred W. Hoensch, Esq. (admitted *pro hac vice*)
PARKER IBRAHIM & BERG LLC
5 Penn Plaza, Suite 2371
New York, NY 10001
Main: 212.596.7037
Fax: 212.596.7036
james.berg@piblaw.com
fred.hoensch@piblaw.com
*Attorneys for Santander Bank, National Association*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SHELLEY FOOD STORES, INC. II<br>dba SHELLEY'S FOODSERVICE,<br><br>Debtor. | Case No. 15-23535-rdd<br><br>Chapter 11 |

**SUPPLEMENTAL OBJECTION OF SECURED CREDITOR SANTANDER BANK, NATIONAL ASSOCIATION TO DEBTOR'S MOTION FOR ORDERS (A) AUTHORIZING DEBTOR (I) TO OBTAIN POST-PETITION FINANCING AND GRANTING SECURITY INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND 364(c); (II) TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (III) TO PROVIDE ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361; AND (B) SCHEDULING A FINAL HEARING**

Santander Bank, National Association ("Santander") by and through its attorneys, Parker Ibrahim & Berg LLC, hereby submit this supplemental objection to the Debtor's continued use of its cash collateral, and states as follows:

**BACKGROUND**

1. On October 23, 2015 (the "Petition Date"), the Debtor commenced the above-captioned case by filing a Petition under Chapter 11 of the Bankruptcy Code.

2. Santander has a properly perfected first priority lien pursuant to Debtor's July 2, 2014 Line of Credit Loan in the amount of $1,500,00.00 and the $1,000,000.00 Term Loan (the "Santander Loan Agreements"). True and correct copies of the Santander Loan Agreements are

{00523488.DOCX }

attached as Exhibit A to Santander's prior Objection [Docket No. 31] ("Objection") to the Debtor's Motion For Orders (a) Authorizing Debtor (ii) to Obtain Post-Petition Financing and Granting Security Interests Pursuant to 11 U.S.C. §§ 363(b) and 364(c); (ii) to Use Cash Collateral Pursuant to 11 U.S.C. § 363; (iii) to Provide Adequate Protection Pursuant to 11 U.S.C. § 361; and (b) Scheduling a Final Hearing (the "Motion").

3. As security for the Santander Loan Agreements, Debtor granted Santander a security interest in, among other things and without limitation, substantially all of the Debtor's assets including, but not limited to, then owned or thereafter acquired accounts, instruments, inventory, equipment, chattel paper and general intangibles pursuant to a UCC-1 Financing Statement filed on September 18, 2014 (the "Santander Collateral"). A true and correct copy of the UCC-1 Financing Statement is attached as Exhibit B to Santander's prior Objection.

4. As of the Petition Date, the Debtor owed Santander approximately $2,440,000.00 pursuant to the Santander Loan Agreements.

5. The Debtor acknowledges that the liens and security interests granted to Santander were duly perfected and agreed that said liens and security interests are senior and superior in time and right to all other liens and security interests in the Santander Collateral, except for perfected mechanic's liens or purchase money security interests. *See* Motion, ¶ 9.

6. The Debtor also acknowledges that its assets – and the Santander Collateral - consist almost entirely of accounts receivable, and that as of the Petition Date, it believes that Santander is under secured based upon its current gross accounts receivable. *See* Motion, ¶ 15.

7. On October 23, 2015, the Debtor filed its Motion seeking authorization to obtain superpriority post-petition financing and to use Santander's cash collateral.

8. On October 29, 2015, the Court entered an interim order [Docket No. 15] (the "Interim Order"), pursuant to which Santander stipulated to the Debtor's use of its cash collateral

for a period of thirty days. The Interim Order further authorized the Debtor to obtain post-petition financing on an interim basis secured by a superpriority lien on the Debtor's post-petition accounts receivable. As purported adequate protection, Santander was granted a replacement lien, a junior lien to secure any Collateral Diminution and adequate protection payments of $20,000.00 per month.

9. On November 24, 2015, a hearing was held on the Debtor's continued use of Santander's cash collateral at which the Court found that Santander's interests were not adequately protected and prohibited the continued use of the cash collateral.

10. At an emergency hearing scheduled on November 25, 2015, the Court permitted the Debtor to resume using Santander's cash collateral through December 2, 2015 on the condition that the proceeds of all post-petition receivables factored to Bayview would be remitted to Santander up to the amount of the Debtor's actual cash usage during that period (the "Second Interim Period"), and that if Bayview does not for any reason factor such receivables, Santander would be granted a first priority replacement lien on such post-petition receivables and the proceeds therefrom.

11. A Second Interim Order to this effect was negotiated by the parties and entered by the Court on December 3, 2015 [Docket No. 44]

12. Thereafter, Santander and the Debtor negotiated a Third Interim Order [Docket No. 45] whereby the Debtor could continue with limited use Santander's cash collateral through December 9, 2015 on the same terms as the Second Interim Order.

13. To date, Santander has received no funds from Bayview.

14. A Final Hearing on the Debtor's use of Santander's cash collateral has been scheduled for December 18, 2015 at 10:00 a.m.

15. Despite the Debtor's many hopes and promises, none of which have come to fruition, the Debtor is in no better position today than it was at the outset of this case. Santander has been

significantly harmed and, accordingly, Santander hereby objects to any continued use of its cash collateral.

## ARGUMENT

16. A secured creditor's interest in collateral is entitled to adequate protection under section 363(e) of the Bankruptcy Code. This section of the Bankruptcy Code "insure[s] that the secured creditor receives the value for which he bargained." S. Rep. No. 95-989, at 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5839; accord H.R. Rep. No. 95-595, at 303 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6295; *see United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1397 (5th Cir. 1986), *aff'd*, 484 U.S. 365 (1988) ("Although the stay temporarily prevents that aspect of the bargain from being fulfilled, a creditor should not be prejudiced by a debtors' continued use of collateral during the proceeding. That bargain must be protected by compensating for a decline in the value of the collateral through its use during the pendency of the stay."); *see also In re O.P. Held, Inc.*, 74 B.R. 777, 782-84 (Bankr. N.D.N.Y. 1987) (holding that secured lender must be assured of the maintenance and recoverability of its lien, and that debtor must prove that secured creditor will realize the value of its bargain).

17. Under section 361 of the Bankruptcy Code, adequate protection can take the form of, among other things, periodic cash payments, additional or replacement liens, or such other relief as will provide the "indubitable equivalent" of the secured creditor's interest in the collateral. The law is clear that section 361 of the Bankruptcy Code does not limit adequate protection to the enumerated examples, and courts have the authority to fashion adequate protection as they deem appropriate under the circumstances. *See, e.g., In re O.P. Held, Inc.*, 74 B.R. at 782 (noting that section 361 "has been consistently interpreted as not containing an exclusive list" of forms of adequate protection).

18. The Debtor bears the burden of proving by clear and convincing evidence that a secured creditor is adequately protected. *See* 11 U.S.C. § 363(p)(1); *see also In re Polzin*, 49 B.R. 370, 371-72 (Bankr. D. Minn. 1985) ("[D]ue to the fact that the collateral is consumed or used up in a § 363 context and the creditor's use is not merely delayed as in a § 362 context, the adequate protection standard is a strict one. . . . It is the Debtor's burden to demonstrate that the secured party is adequately protected.") (citations omitted); *In re O.P. Held, Inc.,* 74 B.R. at 784 (holding that debtor requesting court authorization for use of cash collateral "must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case" (quoting *N. Trust Co. v. Leavell (In re Leavell)*, 56 B.R. 11, 13 (Bankr. S.D. Ill. 1985))).

19. The Bankruptcy Code provides special protections to ensure that secured creditors are not deprived of their interests in cash collateral by the unauthorized use thereof. *See, e.g., In re Kleather*, 208 B.R. 406, 416 (Bankr. S.D. Ohio 1997) (noting that, in enacting section 363 of the Bankruptcy Code, Congress gave "special treatment to 'cash collateral'. . . in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor") (quoting *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981)). Consequently, although section 363(c)(1) otherwise permits a debtor to use property of the estate in the ordinary course of business without notice and a hearing, section 363(c)(2) prohibits a debtor from using cash collateral for any purpose without first obtaining court approval or the consent of the secured lender. *See* 11 U.S.C. § 363(c)(2).

20. A court is prohibited from authorizing non-consensual use of cash collateral unless the secured party's interest therein is adequately protected. *See* 11 U.S.C. § 363(e) (providing that a court "shall", upon request by an entity with an interest in property proposed to be used, sold or leased by a debtor, "prohibit or condition such use, sale, or lease as is necessary to provide adequate

protection of such interest."); *see, e.g., Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity.").

21. Moreover, "[t]he standard of adequate protection to be afforded a creditor when its cash collateral is being used should be a high one. . . . To ask a creditor to release cash requires a strong likelihood of return." *In re Berens*, 41 B.R. 542, 528 (Bankr. D. Minn. 1984). Courts have noted that the volatile character of cash collateral entitles lienholders to special protections under the Bankruptcy Code. *See, e.g., In re Kleather*, 208 B.R. at 416 (noting that cash collateral is treated specially "for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards. . . ." (*quoting In re Mickler*, 9 B.R. at 123); 3 COLLIER ON BANKRUPTCY ¶363.03[4][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) (noting the "unique nature of cash collateral, and the risk to the entity with an interest in such collateral, arising from the dissipation or consumption of the collateral").

22. Finally, any substitute adequate protection offered in lieu of cash must be of the "most indubitable equivalence" that "must both compensate for present value and insure the safety of the principal." *Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus. Inc.)*, 734 F.2d 426, 433 (9th Cir. 1984); *see also Aetna Realty Investors, Inc. v. Monarch Beach Venture, Ltd (In re Monarch Beach Venture, Ltd.)*, 166 B.R. 428, 434 (C.D. Cal. 1993) (noting that an indubitable equivalent "(1) provides the creditor with the present value of its claim, and (2) insures the safety of its principle [sic]").

23. Here, Santander is not adequately protected.

24. At the outset of this case and on less than one business day's notice, Santander agreed to take a reasonable wait and see approach and consented to the use of its cash collateral for

a period of thirty days while the Debtor was attempting to resume and rehabilitate its operations. However, this has not happened.

25. Throughout this case, the Debtor has made many representations about its hopes for the future, including (i) incorporating the business of another company, Magnolia Beef, into its operations, (ii) subleasing its facility to two other food service companies with which the Debtor hopes to eventually merge, (iii) generating cash though the factoring of post-petition receivables to Bayview, (iv) obtaining DIP financing from another lender and (iv) obtaining exit financing from Porter Capital or another lender.

26. None of these have occurred.

27. On December 3, 2015, the Debtor met with representatives of Santander to discuss its plans so that Santander could evaluate the Debtor's prospects going forward. At this meeting, Santander requested that the Debtor provide sale projections through January. No such projections were provided until the eleventh hour of the hearing date.

28. Santander also requested that the Debtor provide copies of any signed sublease agreements. On December 16, 2015, the Debtor provided copies of unsigned, non-finalized sublease agreements and an unsigned, non-finalized sales agency agreement with Magnolia Beef. As the Debtor has not provided any executed agreements, Santander can only assume that no such agreements exist.

29. Santander also requested copies of the Debtor's voided check register and back-up documentation for purchases made by the Debtor's principal, Scott Geller, on his personal credit card which were then reimbursed to him by the Debtor on October 30, 2015 and November 30, 2015. Again, those documents were not provided to Santander until the eleventh hour of the hearing date. Among the other causes for serious concern in this case, the back-up documentation for Mr. Geller's personal expenses that were reimbursed by the Debtor do not appear to have any

relation to the business of the Debtor, including, *inter alia*, several StubHub charges totaling more than $3,000.00, numerous charges for purchases at Barnes & Noble, and a Morristown BMW charge of nearly $500.00.

30.     Further, the aging report provided by the Debtor on December 16, 2015 for the period of December 3, 2015 through December 14, 2015 shows that the Debtor only did $49,654.87 in sales during this period. This amount is insufficient to cover the Debtor's overhead, let alone provide adequate protection to Santander.

31.     In fact, Santander did not even receive a proposed final cash collateral order or a proposed budget for the remainder of the year from the Debtor until after close of business yesterday, just over one day before the final cash collateral hearing.

32.     The Debtor represented that its pre-petition receivables totaled $1,535,871.03 as of the Petition Date. Since that date, the Debtor has depleted Santander's cash collateral by nearly $800,000.00 and Santander has only received $20,000.00 in adequate protection payments. Accordingly, Santander has been significantly and irreparably harmed.

33.     Further, despite obtaining Court approval to factor its post-petition receivables to Bayview on October 29, 2015, it does not appear that any such receivables have been factored yet, nor has Santander received any funds from Bayview to compensate Santander for the depletion of its collateral during the Second and Third Interim Periods.

34.     As set forth in the Debtor's proposed final order, the Debtor is seeking to continue to use Santander's cash collateral through the end of the year. The Debtor proposes that adequate protection will take the same form as in the Second and Third Interim Orders whereby Bayview would remit direct to Santander all factored proceeds of post-petition receivables to Santander to compensate it for the depletion of its remaining collateral through the end of the year. However, the Debtor **admits** that there will be a **shortfall of approximately $182,000.00** between the amount of

cash collateral the Debtor seeks to use, and the projected amount of receivables to be factored through the end of the year. Although the Debtor "believes" that this shortfall will be made up through the factoring of other projected post-petition receivables by January 17, 2015, this is simply not adequate protection. The Debtor is essentially requesting that the Court order Santander to extend a **$182,000.00 loan** to the Debtor through January. This is in addition to already having depleted Santander's collateral by nearly $800,000.00.

35. At this point, the Debtor is simply not generating enough cash flow to cover its day-to-day operating expenses. Moreover, none of the Debtor's projected deals or financing have come to fruition and the Debtor's prospects of reorganization seem more like a pipe dream than a reality.

36. While Santander it not unsympathetic to the Debtor's financial situation, Santander's interests simply cannot be adequately protected going forward. Accordingly, Santander must oppose any future use of its cash collateral by the Debtor.

**WHEREFORE,** Santander respectfully requests that the Court enter an Order (i) prohibiting any further use of Santander's cash collateral and (ii) granting Santander such other and further relief as is just, proper and equitable.

Dated: December 17, 2015

**PARKER IBRAHIM & BERG LLC**
*Attorneys for Secured Creditor,*
Santander Bank, National Association

*/s/* James P. Berg
James P. Berg, Esq.
Fred W. Hoensch, Esq. (admitted *pro hac vice*)
270 Davidson Avenue
Somerset, New Jersey 08873
Phone: 908.725.9700
Facsimile: 908.333.6230
james.berg@piblaw.com
fred.hoensch@piblaw.com